IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RESEARCH IN MOTION LTD. and<br>RESEARCH IN MOTION CORP., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:06-CV-0973-N |
| DATAQUILL BVI, LTD., | § § § | |
| Defendant. | § | |

# ORDER

Before the Court is Defendant DataQuill BVI, Ltd.'s ("Dataquill") Rule 12 motion to dismiss for lack of subject matter jurisdiction and for lack of personal jurisdiction. FED. R. CIV. P 12(b)(1) & (2) [7]. DataQuill contends there is no actual controversy, as required for a declaratory judgment action. DataQuill further contends Plaintiffs Research in Motion, Ltd. ("RIM, Ltd.") and Research in Motion Corp. ("RIM, Corp.") (together "RIM") fail to allege facts identifying "minimum contacts" sufficient to support personal jurisdiction. For reasons discussed below, the Court denies DataQuill's motion. Also before the Court is RIM's motion for leave to file a first amended complaint [29], which the Court grants.

## I. BACKGROUND

DataQuill, a limited liability company organized under the laws of the British Virgin Islands, with its principle place of business in Tortola, British Virgin Islands, is the assignee of record of United States Patent No. 6,058,304 entitled "Data Entry System" (the "'304 patent"). The '304 patented technology concerns handheld mobile devices having remote

access capability, with optional features such as merchandising, touch sensitive screen, or integrated camera. Currently licensed devices include Palm's popular Treo™ line of mobile smartphones, and others.

On May 16, 2005, DataQuill's litigation counsel, Rhett Dennerline,[1] sent RIM a letter regarding the '304 patent, labeled "viol. notice." The letter encouraged RIM to examine a number of the '304 patent claims, and assured RIM that its examination "should confirm the belief that an appropriate license and/or covenant not to sue . . . would benefit RIM by providing it the ability to practice the identified '304 patent claims without violating the rights under that patent." Def. App. at 9. The letter highlighted recently resolved litigation with Handspring Inc./PalmOne concerning its Treo™ devices.

RIM responded on May 24, 2005, and requested a claims chart comparing the asserted claims to RIM's products. Dennerline replied on September 16. In his response, also labeled "viol. notice," Dennerline stated, "if one takes the '304 patent claims identified and compares each/every limitation of those claims to the structure and features contained in the RIM models, the analysis is apparent." Def. App. at 40. Nevertheless, Dennerline included a sample chart, marked "subject to F.R.E. 408 privilege." Dennerline also requested RIM to advise whether or not RIM had a desire to further discuss possible license arrangements regarding the '304 patent.

---

[1]Dennerline is a member of Competition Law Group LLC, based in Chicago, Illinois. DataQuill also retained the Oregon firm Resolution Counsel LLP, specifically to assist in engaging companies in license discussions. Def. Br. at 2.

Because RIM did not respond to DataQuill's September 16, 2005, correspondence, Dennerline followed up with a letter on March 10, 2006, labeled "further re viol. notice." Dennerline noted that he had not received communication regarding "our prior violation notice concerning [the '304 patent]," and proceeded to discuss recently completed lawsuits against Handspring, Inc./PalmOne and Kyocera Wireless Corp., in which DataQuill prevailed. Def. App. at 48. Dennerline gave RIM ten days "to arrange a meeting to discuss the need for RIM to acquire an appropriate license to the '304 patent." *Id.* RIM's Parvis contacted Dennerline, and proposed a meeting at RIM's offices in Irving, Texas.

On April 13, 2006, Dennerline and Eric English, of Resolution Counsel, traveled to Dallas to meet with Brian Rivers and Barbara Parvis of RIM. English described Dennerline as DataQuill's "litigation lawyer," and described himself as a "settlement lawyer." English stated that Dennerline and his firm – Competition Law Group – would get involved if the parties could not agree on license terms. DataQuill claims the discussions were conducted subject to Federal Rule of Evidence 408, although DataQuill did not demand a specific settlement amount at this meeting. Instead, DataQuill gave a PowerPoint presentation that focused largely on DataQuill's litigation against other smartphone manufacturers. RIM claims DataQuill emphasized its purported success in the litigation and the defendants' large defense costs. DataQuill then demanded that RIM divulge its sales figures, and RIM refused.

English and Dennerline returned to Dallas on May 30, 2006, for a second meeting. At that meeting, DataQuill again demanded that RIM divulge its sales figures, and RIM refused. DataQuill also demanded an amount to settle, but RIM refused to pay. English then

ORDER – PAGE 3

suggested that DataQuill would reduce its demand if RIM would raise its offer. English justified his offer to reduce DataQuill's demand by explaining that it would cost RIM at least the same amount to defend a patent infringement suit in the Eastern District of Texas. RIM again refused, and allegedly ended the negotiations.

The following day, RIM filed this suit, pursuant to 35 U.S.C. § 1 and 28 U.S.C. § 2201 for declaratory judgment that RIM does not infringe DataQuill's '304 patent and that the '304 patent is invalid.

DataQuill now moves to dismiss this case pursuant to Rule 12 for want of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). DataQuill contends that the Court lacks subject matter jurisdiction over the declaratory judgment action because RIM has failed to allege "an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit . . . ." *BP Chemicals Ltd. v. Union Carbide Corp*, 4 F.3d 975, 978 (Fed. Cir. 1993). DataQuill alternatively asks the Court to decline exercising jurisdiction as a matter of judicial discretion. DataQuill also moves for dismissal for want of personal jurisdiction. FED. R. CIV. P. 12(b)(2). DataQuill argues that RIM failed to allege certain "minimum contacts" with the forum state establishing personal jurisdiction.

## II. DATAQUILL'S ACTIONS CREATED A REASONABLE APPREHENSION OF SUIT

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Federal Circuit explained that the

"purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1345 (Fed. Cir. 2003). In other words, the Act provides a practical solution in situations where "the interests of one side to the dispute may be served by the delay in taking legal action," *id.*, provided the controversy is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

With patent right declarations, the declaratory plaintiff establishes that a controversy is definite and concrete by satisfying a two part test. *Cardinal Chemical Co. v. Morton Intern., Inc.*, 508 U.S. 83, 95 (1967) ("[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy."). First, the declaratory plaintiff must show "an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit . . . ." *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005). Absent an explicit threat, a "reasonable apprehension" is determined by examining the "totality of the circumstances." *See BP Chemicals,* 4 F.3d at 978. Next, the declaratory plaintiff must show "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004). The Federal Circuit explained that "[t]he element of threat or reasonable apprehension of suit turns on the

conduct of the patentee, while the infringement element depends on the conduct of the asserted infringer." *BP Chemicals*, 4 F.3d at 978.

Here, Dataquill concentrates its argument on RIM's failure to allege actions on the part of DataQuill that create an objectively reasonable apprehension of suit. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) ("The test . . . is objective and is applied to the facts existing when the complaint is filed."). In other words, DataQuill confines its argument for dismissal to the first prong. So too will the Court confine its analysis. Accordingly, the Court will first "look for any express charges of infringement, and if none, then to the totality of the circumstances." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992). The "party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chemical*, 508 U.S. at 95.

### A. RIM Alleges an Express Charge of Infringement

RIM first attempts to establish a reasonable apprehension of suit by showing that DataQuill expressly charged RIM with patent infringement. *Cardinal Chemical*, 508 U.S. at 96 ("If a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the [Declaratory Judgment] Act."). As the Federal Circuit explained, "[i]f [the] defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *Arrowhead Indus.*, 846 F.2d at 736. Here, RIM

argues that every letter received from DataQuill was labeled a "viol. notice," showing that DataQuill considered RIM to be in violation of its patent rights. The letters further referred to RIM's need to take a license to avoid "violating [DataQuill's] rights" under the '304 patent. In response to RIM's request for a claims chart showing how the '304 patent's claims applied to RIM's products, DataQuill replied that the analysis was apparent. RIM contends that this conduct amounts to an express charge of infringement and thus establishes that a concrete controversy exists.

DataQuill contends the letters merely asserted patent coverage and requested to enter license negotiations and, therefore, did not create an objectively reasonable apprehension of suit. The Federal Circuit has held that language in a letter stating that a party's product or service is "covered by" or "falls within" the patent at issue does not amount to an "express charge" of infringement. *See, e.g.*, *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052 (Fed. Cir. 1995) (product "covered by" patent); *Shell Oil*, 970 F.2d at 888-89 (plaintiff's activities "fall within," are "covered by," and are "operations under" patent). DataQuill argues that the "viol[ation] notice" language employed here is similarly benign. DataQuill further argues that because its letters invited license discussions, no definite and concrete controversy exists; "[a]n attempt to conduct license negotiations is a commercial activity that does not create jurisdiction." Def. Reply Br. at 3 (quotations and citations omitted). In sum, drawing from the district court in the Southern District of New York, DataQuill argues, "[i]f every suggestion of patent coverage and request to enter license negotiations were deemed to be a 'threat' sufficient to justify a declaratory judgment, there

ORDER – PAGE 7

would be far fewer patent license negotiations and far more litigation." *Sirius Satellite Research Inc. v. Acacia Research Corp.*, 2006 WL 238999 at *4 n.6 (S.D.N.Y. January 30, 2006).

Contrary to DataQuill's position, its letters go beyond merely suggesting patent coverage or offering a license. To be sure, DataQuill's letters notify RIM that RIM's products utilize the '304 patent and invite discussion with regard to appropriate license negotiations. Yet, DataQuill's letters do not stop there. The predominate theme of each letter is the successful litigation, and resulting licenses, related to the '304 patent. Although DataQuill at no time expressly threatens, "you are infringing our patent and we will sue you," the letters imply as much. Additionally, the ominous ten day deadline surely suggests something bad will happen if RIM does not comply. On balance, the Court finds that DataQuill's correspondence, taken together, constitutes an express threat.

### B. The Totality of the Circumstances Establish that DataQuill's Actions Created a Reasonable Apprehension of Suit

In the alternative, the Court finds that the totality of the circumstances created a reasonable apprehension of suit. "In light of the subtleties in lawyer language, however, the courts have not required an express infringement charge. When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Indus.*, 846 F.2d at 736; *see also BP Chemicals*, 4 F.3d at 979 ("Declaratory judgment jurisdiction does not require direct threats. Indirect threats or actions that place the

declaratory plaintiff in reasonable apprehension of suit will meet the test for a declaratory judgment action.").

Considering the totality of the circumstances, DataQuill's actions created an objectively reasonable apprehension of suit. First, the letters, sent by DataQuill's litigation counsel and discussing past successful litigation, at minimum strongly imply charges of infringement. Second, DataQuill's behavior at the two meetings with RIM creates a reasonable apprehension of suit. Dennerline, DataQuill's litigation counsel, attended the meetings and was referred to as "the litigator" who "likes to litigate" and who would "take over" if RIM did not take a license. His very presence was an implied threat of litigation. DataQuill also spent much of the first meeting discussing its successful past litigation and emphasized the millions of dollars that defendants spent defending DataQuill's claims. DataQuill's single strongest implied threat of litigation was its use of RIM's expected cost of defense in the Eastern District of Texas as leverage to get RIM to raise its settlement offer.

As the Federal Circuit has stated, "it is the objective words and actions of the patentee that are controlling" when determining whether a reasonable apprehension of suit exists. *BP Chemicals*, 4 F.3d at 979. Here such words and actions include: DataQuill's letters discussing past successful litigation and claiming infringement; DataQuill's behavior at the two meetings with RIM – namely, spending much of the first meeting discussing its successful past litigation and emphasizing the millions of dollars that defendants spent defending DataQuill's claims; and DataQuill's use of RIM's expected cost of defense in the Eastern District of Texas as leverage to get RIM to raise its settlement offer. While asserting

one's best argument, or "jawboning," alone is insufficient to create a reasonable apprehension of suit, DataQuill's conduct goes beyond merely jawboning. DataQuill's conduct was sufficient to create an objectively reasonable apprehension of suit.

The only remaining question is whether negotiations had broken down such that a litigation controversy arose. The Federal Circuit has observed that "a litigation controversy normally does not arise until the negotiations have broken down." *Phillips Plastics*, 57 F.3d at 1053. DataQuill contends that negotiations had not yet broken down and that the March 30, 2006, meeting ended with RIM's representatives informing DataQuill that they would talk to their business people and get back to DataQuill, but filing this action the following day. DataQuill therefore argues that circumstances were such that no reasonable apprehension of suit existed. Yet, a reasonable apprehension of suit may arise during negotiations if "the possibility of litigation objectively appear[s] to compel acceptance of the offered terms." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992); *see also Indium Corp of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (existence of "ominous business context" may satisfy the actual controversy requirement). Such was the case here. During the course of negotiations, neither party was able to agree on the terms of a license. Finally, DataQuill used RIM's expected cost of defense in the Eastern District of Texas as leverage to get RIM to raise its settlement offer. Under those circumstances, RIM could reasonably have felt that the only choices DataQuill offered were license or litigate. Accordingly, the Court finds that DataQuill's conduct created a reasonable apprehension of suit and thus subject matter jurisdiction.

### C. The Court Declines DataQuill's Invitation to
### Exercise Discretion to Decline Jurisdiction

Finally, the Court will not exercise its discretion to decline jurisdiction. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) ("the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction."). DataQuill observes that RIM's suit looks like a preemptive strike to foreclose an action in the Eastern District of Texas and reserve its chosen forum, and therefore contravenes the Declaratory Judgment Act's purpose. As the Federal Circuit explained, "[t]he purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *BP Chemicals*, 4 F.3d at 977. Because DataQuill's actions created a reasonable apprehension of suit, RIM was justified in seeking judicial resolution of the dispute; it was not required to wait for DataQuill to make its move. This is a valid use of the Declaratory Judgment Act, and the Court will not decline jurisdiction.

### III. THE COURT DENIES DATAQUILL'S MOTION
### TO DISMISS FOR LACK OF PERSONAL JURISDICTION

DataQuill next moves to dismiss pursuant to Rule 12 for lack of personal jurisdiction. DataQuill argues that RIM's complaint does not allege facts identifying the "minimum contacts" DataQuill is alleged to have established, or other facts supporting personal jurisdiction in the state of Texas.

## A. Legal Standard

In cases arising under federal law, a federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.[2] *Hildebrand v. Steck Mfg. Company, Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Due process requires the satisfaction of two elements for the exercise of personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum which results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair and reasonable, under traditional standards of fair play and substantial justice, to allow the suit to proceed in the forum state in light of other possible jurisdictions. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). These requirements ensure that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

Federal Circuit law governs the issue of personal jurisdiction in a patent case. *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *see also Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) ("The jurisdictional issue presented by

---

[2] Because the Texas long arm statute extends the personal jurisdiction to the extent allowed by the Due Process Clause, this two prong test collapses into one and asks whether exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424-25 (5th Cir. 2005).

an out-of-state patentee is no less intimately involved with the substance of the patent laws than that of an out-of-state accused infringer."). In *Akro*, the Federal Circuit set forth a three part test to determine whether the exercise of jurisdiction comports with due process. The test asks "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citing *Akro*, 45 F.3d at 1545). At bottom, "the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there." *Breckenride Pharm., Inc., v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006)

As in all cases, "[w]hen a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAAA Development LLC*, 190 F.3d 333, 335 (5th Cir. 1999) ( citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). If, as here, the district court chooses to decide the motion to dismiss without an evidentiary hearing, the plaintiff may satisfy this burden by presenting a prima facie case for personal jurisdiction. *Wilson*, 20 F.3d at 648 (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The court will take allegations of the complaint as true, except those allegations controverted by opposing affidavits, and the court will resolve all conflicts in the facts in favor of the plaintiff. *Thompson*, 755 F.2d at 1165. If the plaintiff makes this prima facie showing, the burden then shifts to the

defendant to show that the assertion of jurisdiction would be unreasonable or unfair. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004); *Wien Air Alaska, Inc. v. Brandt* 195 F.3d 208, 215 (5th Cir. 1999).

### *B. Jurisdiction is Proper in the Northern District of Texas*

In the patent context, "[p]rinciples of fair play and justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). For example, in *Red Wing Shoe* the Court held that "[s]tandards of fairness demand that [the patentee] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights." *Red Wing Shoe*, 148 F.3d at 1355. "In short, beyond the sending of an infringement letter, other activities are required in order for a patentee to be subject to personal jurisdiction in the form." *Inamed Corp.*, 249 F.3d at 1361 (quotations and citations omitted).

DataQuill has engaged in sufficient "other activities" for this Court's exercise of personal jurisdiction to comport with due process. The activities include DataQuill's many contacts during the course of license negotiations, DataQuill's two in person visits to RIM's facility, and DataQuill's retention of Dallas counsel to prosecute the '304 patent.[3] The Court

---

[3]DataQuill argues that the fact that it retained a Dallas patent lawyer, Rhys Merrett, to prosecute the '304 patent is irrelevant. DataQuill notes that Congress has provided jurisdiction in the District of Columbia. *See* 35 U.S.C. § 293. According to DataQuill, if the patent lawyer's office were a sufficient contact to establish jurisdiction, there would be no need for section 293. The Court today need not consider whether such a contact alone is sufficient for jurisdiction, as DataQuill has other forum contacts that, in the aggregate, support jurisdiction.

considers DataQuill's purposefully directed activities in Texas – primarily, its two in person visits – sufficient minimum contacts upon which to base jurisdiction. While the Court acknowledges that a "patentee should not subject itself to personal jurisdiction in a forum solely by informing a party . . . of suspected infringement," *Red Wing Shoe*, 148 F.3d at 1361, or by offering a license, nonetheless a patentee should be subjected to the jurisdiction of a forum when it purposefully directs numerous, substantial activities to that forum. In *Red Wing Shoe*, the patentee sent three warning letters to the declaratory plaintiff. Here DataQuill not only informed RIM of its patent rights and offered a license, but contacted RIM numerous times via mail, phone and e-mail. Most importantly, unlike in *Red Wing Shoe*, DataQuill made two in person visits to RIM's facility to negotiate a license under a threat of litigation in Texas. When a party purposefully directs activity beyond merely writing letters informing a party of patent rights or inviting license negotiations, personal jurisdiction can lie, provided the claim at issue arises directly out of such conduct and the exercise of such jurisdiction is reasonable and fair.

Here, RIM's declaratory judgment action "arises out of or relates to" DataQuill's claim of infringement and subsequent negotiation efforts. Arguably, this case did not strictly "arise out of" DataQuill's contact with RIM and the forum state, but instead out of RIM's use of its product which prompted DataQuill to contact RIM. However, the Supreme Court's use of "arise out of or related to" is "disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Inamed Corp.*, 249 F.3d at 1362. This case is certainly "related to" DataQuill's conduct; "[t]he

central purpose of a declaratory action is often to clear the air of infringement charges." *Id.* (quotations and citations omitted). Therefore, the Court finds that this action "arises out of or relates to" DataQuill's purposefully directed activity.

DataQuill has failed to establish that the assertion of jurisdiction would be unreasonable or unfair. *Wien Air Alaska, Inc. v. Brandt* 195 F.3d 208, 215 (5th Cir. 1999) ("Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair."). In fact, the record indicates that Texas is DataQuill's jurisdiction of choice. In addition to retaining Dallas counsel to prosecute its patent, DataQuill threatened RIM with litigation in the Eastern District of Texas. As RIM argues, "[g]iven that DataQuill threatened RIM with Texas justice, it would be unfair *not* to subject DataQuill to the jurisdiction of a Texas court." Pl. Br. at 14. The Court agrees. Without a showing to the contrary, and considering Texas's "substantial interest in protecting its residents from unwarranted claims of patent infringement," the Court finds the assertion of jurisdiction in the Northern District of Texas reasonable and fair. *Electronics for Imaging*, 340 F.3d at 1352.

Finally, exercising personal jurisdiction here does nothing to circumvent "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *World-Wide Volkswagon Corp.*, 444 U.S. at 292. In *Red Wing Shoe*, the Federal Circuit discussed its personal jurisdiction jurisprudence as it related to an underlying policy to foster settlement of infringement claims. The Court explained that basing personal jurisdiction on a patentee's "*initiation* of settlement negotiations" would "be contrary to fair

play and substantial justice." *Red Wing Shoe*, 148 F.3d at 1361 (emphasis added). This holding is not contrary to that policy. A patentee remains free "to inform a party who happens to be located in a particular forum of suspected infringement without the risk of being subjected to a law suit in that forum." *Hildebrand*, 279 F.3d at 1356. Only if a patentee purposefully directs activity beyond merely informing a party of patent rights or initiating settlement negotiations will it subject itself to the jurisdiction of the forum to which it directed its activities. *See Akro*, 45 F.3d at 1542 (patentee sent cease-and-desist letters into the forum state and conducted subsequent negotiations for settlement). Accordingly, the Court denies DataQuill's motion to dismiss for lack of personal jurisdiction.

### IV. THE COURT GRANTS RIM'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Upon considering RIM's motion for leave to file a first amended complaint and DataQuill's response, the Court grants RIM's motion.

Signed March 27, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 17