IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RESEARCH IN MOTION LIMITED and RESEARCH IN MOTION CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>DATAQUILL BVI, LTD.,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:06-cv-973-N<br><br>ECF<br><br>Jury Trial Demanded<br><br>Judge David C. Godbey |

**RIM'S REPLY IN SUPPORT OF RIM'S
MOTION FOR ISSUANCE OF LETTERS ROGATORY**

**I.    INTRODUCTION**

While it should be standard operating procedure for parties to work out the depositions of inventors named on the patents-in-suit in cases such as this one, RIM has faced substantial opposition from DataQuill in setting up what should be simple depositions of the named inventors, including Mr. Robb. RIM has attempted for months to work out those depositions, including by offering to bring Mr. Robb to the United States at RIM's expense and/or to take a U.S.-style deposition under the Federal Rules of Civil Procedure, eliminating the need for Letters Rogatory at all. Duffey Decl., Tab 1. Mr. Robb, a "beneficial owner" of DataQuill, and DataQuill have rejected all of RIM's proposals. Duffey Decl., Tab 2. DataQuill's opposition is a tactic to prevent and further delay RIM from taking appropriate discovery in this case. RIM respectfully requests that the Court grant RIM's motion and deny DataQuill's proposed revisions to RIM's proposed Letters Rogatory.

## II. BACKGROUND – MR. ROBB'S INVOLVEMENT WITH DATAQUILL

As a starting point, RIM is at a loss as to why DataQuill, as a counterplaintiff, does not believe that the Rules require DataQuill to bring Mr. Robb to the U.S. for a deposition, in that RIM has recently discovered that Mr. Robb appears to be a "managing agent" of DataQuill. While it was known to RIM that Mr. Robb was previously affiliated with a DataQuill entity, RIM recently discovered that, in a previous litigation brought by DataQuill, Mr. Robb testified:

> Q. When did you believe that you had an attorney/client relationship with Mr. Smith [DataQuill's current litigation counsel] or someone from his law firm?
>
> MR. SMITH: Irrelevant, asked and answered.
>
> MR. CHANCE: You can answer.
>
> THE WITNESS: Well, like I said, my understanding was Frank Callaghan [co-inventor named on the patents in suit] retained the services of Competition Law Group [DataQuill's current litigation counsel]. That was his position for Dataquill, and I'm just a beneficiary of Dataquill, so that's basically it.
>
> So, in essence, once the Competition Law Group was retained, in essence – in effect they represented all of Dataquill including all its shareholders and beneficiaries, as far as I'm concerned.
>
> Q. And who communicated that to you?
>
> A. No one.
>
> Q. So what's your basis of that understanding?
>
> A. My basis of understanding of that is that ***I am a beneficiary owner of DataQuill***, so I'm concerned about what happens to DataQuill as a shareholder and beneficiary owner.

Duffey Decl., ¶ 4 and Tab 3, Transcription of May 31, 2002, Deposition of Garry D. Robb, taken in *DataQuill Ltd. v. Handspring, Inc.*, Case No. 01C 4635, in the Northern District of Illinois, p. 34, lines 1-22 (emphasis added).

Mr. Robb continues to be represented by DataQuill's counsel (Competition Law Group), (Duffey Decl., Tab 4) and it actually is DataQuill, and not Mr. Robb, who opposes the issuance of the Letters Rogatory. *See generally* DataQuill's Opposition (Doc. 79). Thus, Mr. Robb's status as a foreign citizen, outside the control of DataQuill, a party to this case (including as a counterplaintiff) appears to be something of a fiction, when in reality DataQuill likely has the obligation to make Mr. Robb available as a witness without forcing RIM to go through the effort and expense of having Letters Rogatory issued at all, given that Federal Rule 37(b)(2) provides that "[i]f a party or a party's a officer, director, or managing agent of a party ... fails to ... permit discovery,... the court where the action is pending ... may issue further just orders." While Mr. Robb specifically testified that he is not an officer or director of DataQuill BVI, he is a "beneficial owner," owning one third of the ownership trust, which likely makes him a "managing agent" under Rule 37(b)(2). *See* Duffey Decl., Tab 3, Transcription Deposition of Robb, p. 35, lines 23-24.

### III. RESPONSES TO DATAQUILL'S SPECIFIC ARGUMENTS AND PROPOSED AMENDMENTS TO THE LETTERS ROGATORY[1]

DataQuill points out that Mr. Robb has been deposed three times in prior actions involving the '304 patent. However, those depositions do not detract from RIM's separate right

---

[1] DataQuill has attempted to change the name of the party referenced in the case caption from "DataQuill BVI, Ltd." to "DataQuill Ltd." This appears to be inappropriate in that the case caption should remain the same unless a party files a motion and shows why the caption should be changed. A party cannot unilaterally change the case caption or the way to which it is referred in the case caption. Moreover, it appears that DataQuill's proposed change is contrary to testimony from a previous case filed by DataQuill – "Basically the DataQuill Limited is a British Virgin Island Company. It's called DataQuill BVI Limited and there are trustees and shareholders within that structure, and in essence I have been designated a beneficiary of that trust. Full stop. Full stop, that's it. That's how it's set up." Duffey Decl., ¶ 4, Tab 3, Transcription of May 31, 2002, Deposition of Garry D. Robb, taken in *DataQuill Ltd. v. Handspring, Inc.*, Case No. 01C 4635, in the Northern District of Illinois, p. 35, lines 10-17. Mr. Robb also stated "I am a beneficiary owner of DataQuill...." *Id*. at p. 34, lines 19-20.

or need to depose Mr. Robb and ask appropriate questions of RIM's own choosing. Additionally, this case involves not only the '304 patent but also the '591 patent. To RIM's knowledge, Mr. Robb has never been deposed on the '591 patent.

### A. DataQuill's Protestations as to the Alleged Factual and Legal Findings are Unfounded

Without waiving attorney work product, RIM has worded the proposed letters rogatory in a manner that it understands is appropriate in order for the Canadian court to subject Mr. Robb to examination and an obligation to produce documents. DataQuill has cited no authority to establish that its alternative language would be sufficient in order to satisfy the standards of the Canadian court to subject Mr. Robb to examination and an obligation to produce documents.

### B. DataQuill Improperly Attempts to Remove the '950 Patent as a Subject of Examination

While it does not matter to RIM whether this Court characterizes the '950 patent as "related" to the patents-in-suit or not, the '950 patent is an appropriate matter for examination and should remain in the Letters Rogatory. DataQuill cleverly and improperly attempts to remove this subject matter from the examination. *See* DataQuill's redlines to the proposed Letters Rogatory (Doc. 79-3), p. 2, first partial paragraph.

As DataQuill admits, Mr. Robb is also an inventor named on the '950 patent. Mr. Robb's filing and prosecution of the application leading to that patent creates a number of important issues in this case because the application for the '950 patent (U.S. Patent Application Serial No. 09/101,790) was being prosecuted at the same time as that for the '304 patent and because the disclosure and claims of the '950 patent overlapped with those of the '304 patent. The similarities could have given risen to a double patenting rejection of the claims of the '304 and '591 patents in suit, if Mr. Robb had satisfied his duty to make the Patent Office aware of the

4

application for the '950 patent during prosecution of the '304 patent. In addition, prior art within Mr. Robb's knowledge and/or possession with regard to the '950 patent also very well may be relevant to the validity of the claims of the '304 and '591 patents and may have been important to an examiner deciding the patentability of the claims of the '304 and '591 patents.

Clearly, the '950 patent, its subject matter, and its prosecution are relevant to issues in this case. RIM's requests are reasonably calculated to lead to the discovery of admissible evidence in this case, and DataQuill's proposed amendments to remove the '950 patent from subject matter of examination is inappropriate.

### C. DataQuill Takes Issue with RIM's Alleged Factual Findings

The wording of RIM's proposed Letters Rogatory falls within RIM's understanding of how such requests to the Canadian court must be worded in order to satisfy the Canadian court that a witness should be subjected to examination. Such language is presented in the spirit of "upon information and belief" and is not intended to have the impact of a factual finding for any purpose in this case.

### D. DataQuill Improperly Attempts to Modify Canadian Procedure

While DataQuill's opposition at pages 2-3 plainly argues that nothing is intended to deprive Mr. Robb of any rights he may have to object to the Letters Rogatory, this request and the way that DataQuill has proposed to modify the Letters Rogatory are both highly improper.

First, respectfully, DataQuill has not explained why or how this Court could remove Mr. Robb's rights to object to a Canadian court order.

Second, and more importantly, it is RIM's understanding that, short of a question breaching the Canadian Charter of Rights or unless answering a question would violate Mr.

5

Robb's right not to self incriminate or would require the disclosure of attorney-client privileged communications, the normal procedure is that the witness is required to answer the questions being asked of him.  That is the reason why the Canadian court requires the specific topics of inquiry ahead of time and why the party requesting the issuance of Letters Rogatory through a U.S. court must explain the relevance of the topics in order to invoke the Canadian court's involvement.

DataQuill's proposal potentially sets up an impractical situation where RIM could ask a question concerning one of the topics and Mr. Robb could refuse to answer the question, potentially requiring subsequent motion practice before the Canadian court in order to decide whether Mr. Robb should be compelled to answer the question, adding further delay, expense and effort in a foreign country, and unnecessarily complicating the deposition process for RIM.  More appropriate, and standard procedure in Canada, would be for Mr. Robb to be required to answer all questions (with the exception of those invoking Charter of Rights, self incrimination and privilege issues) and his objections be preserved for the time of trial.  Because RIM will have precious little time for examination, among other reasons, RIM has no intention to veer away from the issues critical to the case in Mr. Robb's deposition.

Accordingly, contrary to DataQuill's proposal, this Court should maintain RIM's originally proposed terms and conditions nos. 1, 10 and 11.

E.  **DataQuill's Request to Remove "Evidentiary" from the Terms and Conditions of the Letters Rogatory is Improper**

DataQuill argues that the depositions should not be referred to as "evidentiary" depositions because of the wording of the Federal Rules of Civil Procedure.  Opp. p. 3 and DataQuill's proposed revised Letters at Doc. 79-3, ¶ 6.  What DataQuill ignores is that this is

6

how Canadian procedure requires such depositions to be identified, and that the wording of the Federal Rules of Civil Procedure are of no import to the Canadian court. It is the Canadian court that must be satisfied with the Letters Rogatory, and RIM is concerned that the Canadian court might consider the Letters Rogatory defective if the depositions are not referred to as "evidentiary." RIM does not understand DataQuill's protestations against RIM's proposed language, inasmuch as RIM agrees that any such language in the Letter Rogatory does not automatically mean that all testimony taken in the deposition would necessarily be admissible evidence in this case.

### F.   DataQuill's Request to Take Depositions According to the Federal Rules

From the beginning, RIM has proposed that it take a standard deposition according to the U.S. Federal Rules of Civil Procedure by agreement and avoid the Letters Rogatory process altogether. It now appears that DataQuill attempts to subject RIM to the limitations and burdens of the Letters Rogatory process while having all of the benefits of the Federal Rules. Generally, RIM is in favor of a deposition under the Federal Rules but suggests that the Court consider compelling DataQuill to present Mr. Robb for a deposition under the Federal Rules (either in Canada or in the U.S.) such that RIM is not limited by the specific topics (necessary to satisfy the Canadian court).

### G.   DataQuill Improperly Attempts to Remove a Place, Date and Time Certain for the Deposition and Document Production

While not discussed in its opposition, DataQuill's proposed changes to the Letters Rogatory include removing a date, time and place certain for document production. *See* DataQuill's proposed revisions to the Letters Rogatory, Doc. 79-3 at ¶ 3. Time is of the essence, and a date, time and place certain are needed in order to make the order from the Canadian court

7

specific and in order to hold Mr. Robb to a deadline that is workable in this case. Additionally, while RIM is agreeable to reasonably accommodating Mr. Robb's schedule in setting a time for deposition, RIM does not want for DataQuill's proposed revisions to the Letters Rogatory, Doc. 79-3 at ¶2 to serve as an excuse for DataQuill or Mr. Robb to unreasonably delay the deposition. Accordingly, RIM believes that the Court should not adopt DataQuill's proposed amendment to paragraph 2. If accommodations are necessary, Mr. Robb and DataQuill can raise any scheduling issues if and when they arise, and RIM will work with them in an effort to schedule them conveniently.

## IV.    CONCLUSION

For the foregoing reasons and as set forth in RIM's request to the Court to issue the Letters Rogatory, RIM requests that the Court grant RIM's request and issue RIM's proposed Letters Rogatory and not DataQuill's proposed version. In the alternative, should the Court so choose, RIM would be agreeable to a standard deposition under the Federal Rules of Civil Procedure.

Dated: April 11, 2008

/s/ Peter J. Chassman

Peter J. Chassman (*pro hac vice*)
chassmanp@howrey.com
Texas State Bar No. 00787233
Attorney in Charge

Gregory A. Duffey
duffeyg@howrey.com
Texas State Bar No. 50511771

Robert A. Calico III (*pro hac vice*)
calicor@howrey.com
Texas State Bar No. 24059527

HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002
Tel: 713-787-1400
Fax: 713-787-1440

George W. Bramblett, Jr.
george.bramblett@haynesboone.com
Texas State Bar No. 02867000

Phillip B. Philbin
phillip.philbin@haynesboone.com
Texas State Bar No. 15909020

John R. Emerson
russ.emerson@haynesboone.com
Texas State Bar No. 24002053

HAYNES AND BOONE, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202-3789
Tel: 214-651-5000
Fax: 214-651-5940

ATTORNEYS FOR RESEARCH IN MOTION LIMITED AND RESEARCH IN MOTION CORPORATION

## **CERTIFICATE OF SERVICE**

      I certify that on the 11th day of April, 2008, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means:

      Kay Lynn Brumbaugh
      Jerry L. Beane
      ANDREWS KURTH LLP
      1717 Main Street, Suite 3700
      Dallas, Texas 75201

      David Berten
      Gregory J. Smith
      Rhett Dennerline
      COMPETITION LAW GROUP
      55 W. Monroe Street, Suite 1930
      Chicago, Illinois 60603

      I hereby certify that I have served the foregoing document by mailing a copy to the following individuals:

      None

      /s/ Peter J. Chassman
      Peter J. Chassman